IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>v.<br><br>JAMAR E. PLUNKETT,<br><br>           Defendant. | Case No. 3-13-cr-30005-SPM |

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Compassionate Release filed by Defendant Jamar E. Plunkett pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 58) and the amended motion filed by his counsel (Doc. 67). Plunkett asks the Court to reduce his sentence to time-served due to the COVID-19 pandemic and his serious health conditions. The Government opposes this motion (Doc. 70). For the reasons set forth below, the motion is DENIED.

## BACKGROUND

On January 24, 2013 now-retired District Judge Michael J. Reagan sentenced Defendant Plunkett to 212 months' imprisonment following his guilty plea to one count of distribution of cocaine base in violation of 21 U.S.C. § 841 (a)(1) (Doc. 33). According to the Bureau of Prisons' website, Plunkett is scheduled to be released on January 23, 2028.[1]

---

[1] *See* Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited June 7, 2021).

Plunkett now argues his medical conditions constitute "extraordinary and compelling" reasons to release him under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) (Doc. 67). Plunkett is a 39-year old male who appears to assert every malady that he ever endured to support his release, including a positive diagnosis of tuberculosis in the late 1990s; a broken right elbow in the 2000s; a right leg severely bitten by a dog in 2008 which required 28 stitches; extreme, chronic and constant rotator cuff pain; hearing loss in the left ear; a pinched nerve in the upper back that caused extreme nerve pain; a possible pierced lung; borderline diabetes; Post-Traumatic Stress Disorder (PTSD) due to his mother's death in 2009; and, excessive air conditioning running at night and running through November, which caused him to be jittery to the point he feels as if his heart is exposed to direct air; pain with deep breaths (Doc. 67, pp. 19-20). Plunkett further claims that his pierced lung is aggravated by the fact that he started smoking at age 16, such that his lungs are damaged and it affects his respiration. (*Id.*).

The Government opposes the motion and argues that Plunkett has failed to demonstrate "extraordinary and compelling" reasons for release, noting that Plunkett tested positive for COVID-19 in December 2020 and was completely asymptomatic the entire time in quarantine (Doc. 70, pp. 14-15). The Government points out that Plunkett received his first dose of the Pfizer vaccine on April 6, 2021 and should be fully vaccinated by the middle of May (Doc. 70, p. 15). The government also argues that Plunkett waived the ability to bring his motion because of the plea agreement. (Doc. 70, p. 7). Finally, the government argues that Plunkett remains a danger to the community. (*Id.*).

## THE FIRST STEP ACT OF 2018

Prior to the passage of the First Step Act, a defendant seeking compassionate release first had to request it from the Director of the Bureau of Prisons ("BOP"). 18 U.S.C. § 3582(c)(1)(A) (2018). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion after exhausting administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on their behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

After such a motion is filed, either by the Director of the Bureau of Prisons or by the defendant, the Court may reduce the term of imprisonment after considering the factors set forth in § 3553(a) to the extent they are applicable, upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).

The applicable policy statement can be found at U.S.S.G. § 1B1.13. While the policy statement essentially restates § 3582(c)(1)(A), the Application Notes to the policy statement set forth specific circumstances under which extraordinary and compelling reasons exist for reducing a sentence: (A) the medical condition of the defendant; (B) the age of the defendant (over 70), and (C) family circumstances. U.S.S.G. 1B1.13. A fourth category, "(D) Other Reasons," states: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* Additionally, the policy statement

requires the defendant not be "a danger to the safety of any other person or to the community" pursuant to 18 U.S.C. § 3142(g).

## ANALYSIS

### A.     Plea Agreement Waiver

Before reaching the merits of Plunkett's motion, the Court must first determine whether he waived the ability to bring his motion by the terms of his plea agreement. Plunkett's plea agreement states in pertinent part:

> 2.     The defendant is aware that Title 18, Title 28, and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence through appeal or collateral attack … the **Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28**, or under any other provision of federal law . . . .

(Doc. 33) (emphasis added). The Government argues that this provision and others foreclose Plunkett from seeking relief under 18 U.S.C. § 3582.

In support of its argument, the Government cites to *United States v. Soto-Ozuna*, an unpublished case in which the Seventh Circuit found the defendant waived his right to move under § 3582(c)(2) for a sentence reduction based on Amendment 782 to the Sentencing Guidelines when he agreed not to "seek to modify his sentence . . . in any type of proceeding." *United States v. Soto-Ozuna*, 681 F. App'x 527, 528 (7th Cir. 2017). The Court noted that it will "enforce appellate waivers in plea agreements if the terms of the waiver are express and unambiguous and the defendant knowingly and voluntarily entered into the agreement." *Id.* (citing *United States v. Sakellarion*, 649 F.3d 634, 638–39 (7th Cir. 2011); *United States v. Aslan*, 644 F.3d 526, 534 (7th Cir. 2011)). Because there was no indication the defendant's waiver was not knowing and voluntary, the

Court upheld the waiver and affirmed the district court's denial of defendant's motion. *Id.*

As far as the Court can tell, there are three cases that have relied on *Soto-Ozuna* to deny a compassionate release motion filed under the First Step Act based on the waiver provision in a plea agreement. In these cases, the District Court for the Southern District of Indiana found defendants waived their ability to file a motion for a sentence reduction when their plea agreement expressly forbid them from bringing such a motion "in any later legal proceeding including but not limited to, an action brought under 18 U.S.C. § 3582 or 28 U.S.C. § 2255." *United States v. Egebrecht*, No. 217CR00007JRSCMM, 2020 WL 3510775, at *2 (S.D. Ind. June 29, 2020); *United States v. Harris-Harden*, 2020 WL 5653404, at *2 (S.D. Ind. Sept. 22, 2020); *United States v. Barnett*, 2020 WL 5947013, at *2 (S.D. Ind. Oct. 6, 2020). While acknowledging that some courts "have refused to enforce plea waivers where the defendant was sentenced years before the First Step Act was passed on December 21, 2018, thereby making it impossible for the defendant to 'knowingly' waive any claim under the Act," these defendants signed their plea waivers *after* the enactment of the First Step Act. *See Egebrecht,* 2020 WL 3510775 at *2-3 (defendant signed plea waiver in April of 2019); *see also Harris-Harden*, 2020 WL 5653404 at *2-3 (defendant signed plea waiver in April of 2019); *United States v. Barnett*, 2020 WL 5947013, at *2 (S.D. Ind. Oct. 6, 2020) (defendant "signed his plea waiver on December 26, 2018—several days after the First Step Act was enacted"). Additionally, each defendants' plea agreement specifically precluded actions brought under 18 U.S.C. § 3582. *Id.*

Here, Plunkett's plea agreement, which does not include an express provision barring the filing of § 3582(c)(2) motions, was made *before* the enactment of the First Step Act. *Soto-Ozuna* is also distinguishable from the instant case. In *Soto-Ozuna*, the defendant waived his right to seek to "modify" his sentence. Here, Plunkett waived his right to "contest any aspect of the conviction and sentence that could be contested under Title 18 or Title 28."

A motion for compassionate release does not "contest" a sentence as it was imposed, but rather argues the enumerated or extraordinary factors now warrant a revisiting and modification of that sentence. *E.g.*, *United States v. Monroe*, 580 F.3d 552, 557–58 (7th Cir. 2009) (noting that § 3582(c) is "fundamentally different" from an appeal or collateral attack as it does not seek to "impugn" district court's sentence). As such, the waiver in Plunkett's Sentencing Agreement does not appear to foresee a waiver of a motion under 18 U.S.C. § 3582(c). The Government notes that Plunkett's Sentencing Agreement does explicitly note certain exceptions to his "waiver of his right to appeal or bring collateral challenges[,]" and argues that the failure to list § 3582(c) among this exceptions should be read as an indication that his rights under that section were waived, per the canon of *expressio unius est exclusion alterius*. Because a motion under § 3582(c) does not amount to an appeal or collateral challenge, however, an exception to such a waiver would be unnecessary, and the failure to list § 3582(c) among the listed exceptions does not indicate waiver. Accordingly, the Court finds that Plunkett did not waive his right to bring a motion for compassionate release under 18 U.S.C. § 3582(c). The Court further finds that Plunkett could not have knowingly waived his ability to bring a claim under the First

Step Act, as that avenue to relief did not yet exist. *See United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) ("Waiver is the relinquishment of a known right. The First Step Act amended § 3582, and was passed after his sentence, so he could not have waived the rights it contains."); *United States v. Ellerby*, 2020 WL 2395619, at *2 (D. Md. May 12, 2020) (because defendant pleaded guilty in 2016, and "mindful that a waiver agreement 'should be interpreted narrowly against the government,'" defendant did not waive his right to bring a motion under the First Step Act); *United States v. Burrill*, 2020 WL 1846788, at *2 (N.D. Cal. Apr. 10, 2020) (defendant's December 2017 plea agreement could not encompass the relief he sought under the First Step Act, "as he could not have knowingly waived rights that were not in existence, or even contemplated, at the time of his plea.").

As noted by the Northern District of California, "Congress did not intend for federal prosecutors to have the final say on a defendant's request for compassionate release." *United States v. Sembrano*, 2020 WL 3161003, at *3 (N.D. Cal. May 28, 2020). Rather, "when it passed the First Step Act, Congress made courts rather than executive agencies the final arbiters of compassionate release motions." *Id.* While prosecutors participate in the process of evaluating those motions, they are not the final decisionmakers. *Id.* "It is unacceptable for the United States Attorneys' Office to use its favorable position at the plea-bargaining table to abrogate a role Congress designated for the courts." *Id.* For these reasons, the Court finds that Plunkett's plea agreement was not a knowing and voluntary waiver of his right to seek a sentence reduction under the compassionate release provision of the First Step Act. Thus, he is not foreclosed from bringing his motion in this Court.

B.     **Consideration of Plunkett's Motion**

The Court starts by noting that Plunkett does not satisfy any of the factual predicates listed by the Sentencing Commission as constituting "extraordinary and compelling reasons" justifying compassionate release. Namely, he is not suffering from a terminal illness or other condition from which he is not expected to recover, is under 65 years old, and he does not indicate any death or incapacitation in his immediate family.

In the unusual circumstances of the COVID-19 pandemic, courts have been willing in certain instances to look beyond the enumerated list of extraordinary and compelling reasons listed by the Sentencing Commission, particularly where underlying medical conditions make defendants particularly susceptible to COVID-19. Here, while Plunkett while may have certain underlying medical conditions that could exacerbate his susceptibility to COVID-19, i.e. lung issues, it is not clear that these conditions severely increase his vulnerability to COVID-19 to the point that compassionate release might be warranted. Indeed, the defendant was diagnosed with tuberculosis more than 20 years ago and has not shown how, if at all, such an old condition exacerbates his risk.  Thus, the Court finds that there is no evidence Plunkett is suffering from a serious medical condition that substantially diminishes his ability to provide self-care within the environment of a correctional facility and from which he is not expected to recover. Furthermore, the fact that Plunkett has already tested positive for COVID-19 without exhibiting symptoms seems to detract from his argument that he is exceptionally vulnerable, while little appears to be known about the potential for previously infected individuals to be re-infected with

the coronavirus, such reinfections appear to be relatively rare, and any antibodies from Plunkett's previous infection may provide some level of protection.[2] In addition to already testing positive for COVID-19, Plunkett had already received one vaccine at the time of filing and it was anticipated he would be fully vaccinated in May 2021, preventing 95% of infections.[3] In fact, numerous courts have held that "an inmate cannot demonstrate extraordinary and compelling reasons exist due to COVID-19 when that inmate has been vaccinated against the disease. *United States v. Clark,* 2021 WL 277815 (S.D.W. Va. Jan. 27, 2021); *United States v. Smith,* 2021 WL 364636 (E.D. Mich. Feb. 3, 2021); *United States v. Beltran,* 2021 WL 398491 (S.D. Tex. Feb. 1, 2021).

Although the Court acknowledges that COVID-19 is a serious and extremely contagious illness that has presented unprecedented challenges for the Bureau of Prisons, "the COVID-19 pandemic does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease." *United States v. Sheppard*, No. 09-30001, 2020 WL 2128581, at *2 (C.D. Ill. May 5, 2020). Even if the Court were to find that Plunkett's medical conditions, alone or in conjunction with the COVID-19 pandemic, constituted extraordinary and compelling reasons for a sentence reduction, the § 3553(a) factors and the requirement that the defendant not be "a danger to the safety of any other person or to the community" weigh against releasing him. Plunkett did not

---

[2] *See, e.g.* Rogers et al., Isolation of potent SARS-CoV-2 neutralizing antibodies and protection from disease in a small animal model, SCIENCE, June 15, 2020; Apoorva Mandavilli, Can You Get Covid-19 Again? It's Very Unlikely, Experts Say, N.Y. TIMES, July 22, 2020.

[3] *See* http://cdc.gov/coronavirus.2019-ncov/vaccines/different-vaccines/Pfizer-BioNTech.com

Page **9** of **11**

engage in just one or two transactions with a confidential informant, his charges were based upon seven (7) separate sales of narcotics. Notwithstanding the foregoing, this offense was not plaintiff's first offense, although it was his first time in the federal system. During the sentencing hearing, Judge Reagan noted that Plunkett's criminal career began when he was thirteen (13) years old. (Doc. 54, p. 9). Judge Reagan indicated that every year Plunkett either committed a serious violent crime or was in custody for committing a crime. (*Id*.) Based on this conduct, the Court cannot guarantee that Plunkett would not be a danger to the safety of any other person or the community if he were released.

Moreover, Plunkett has only served approximately 50% of his 212 month sentence. He argues that he currently has a case before the Seventh Circuit with a decision very much in his favor for a potential reduction in sentence; however, that is nothing more than speculation or a possibility at this point. Unless and until there is a decision on the merits, this should not be a factor in any decision. Reducing his sentence to time-served would fail to reflect the seriousness of his crime, promote respect for the law, or provide just punishment for the offense. The Court also fears his short incarceration would be insufficient to deter Plunkett from future criminal conduct or to protect the public from further crimes. Accordingly, after considering the § 3553(a) factors, the Court finds that Plunkett's request for compassionate release must be denied.

## CONCLUSION

For these reasons, the Amended Motion for Compassionate Release filed by Defendant Jamar E. Plunkett (Doc. 67) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:   June 7, 2021**

                                                **/s/ Stephen P. McGlynn**
                                                **STEPHEN P. McGLYNN**
                                                **U.S. District Judge**