IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  **Plaintiff,**<br><br>v.<br><br>JAMAR E. PLUNKETT,<br>#10030-0205,<br><br>                  **Defendant.** | Case No. 13-cr-30003-SPM |

**McGLYNN, District Judge:**

Pending before the Court is a *pro se* Motion for Compassionate Release filed by Defendant Jamar E. Plunkett ("Plunkett") pursuant to 18 U.S.C. § 3582(c)(1)(A)[1]. (Doc. 77). Plunkett asks the Court to reduce his sentence to time-served and decrease his term of supervised release to three years due to the "unusually lengthy and disproportionate nature" of his sentence in comparison to what he would face today under current law. (*Id.*). The Government opposes this motion. (Doc. 47). For the reasons set forth below, the motion is DENIED.

## BACKGROUND

On January 24, 2014, following a guilty plea to one count of distribution of controlled substance: cocaine, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(C), Plunkett was sentenced to a guideline term of 212 months imprisonment. (Doc. 82). The sentence also included a term of 6 years of supervised release to be served upon Plunkett's release from incarceration. (d/e 45). According to

---

[1] The Court notes that a prior motion seeking compassionate release was denied on June 7, 2021. (Doc. 76).

the Bureau of Prisons' website, Plunkett is scheduled to be released on January 23, 2026.[2]

Plunkett now argues that the enactment of the First Step Act ("FSA") in 2018 along with statutory decisions regarding what constitutes a prior drug offense qualifies as "extraordinary and compelling" reasons for granting him compassionate release in the form of a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). (Doc. 77). Plunkett contends that changes in the law have reduced the statutory maximum sentence he could have received to 20 years, from 30 years. (*Id.*). As such, Plunkett argues that his sentence was unusually long and disproportionate in comparison to a current sentence, and claims that his plea was unlawful as it was involuntarily coerced due to the potential for a 30-year sentence. (*Id.*).

The Government opposes the motion, asserting that Plunkett has failed to demonstrate "extraordinary and compelling" reasons justifying compassionate release for the following reasons. (Doc. 81). First, Plunkett cannot satisfy the requirements of U.S.S.G. §1B1.13(a)(6). (*Id.*). Second, U.S.S.G. §1B1.13(a)(6) is invalid and conflicts with binding Seventh Circuit precedent. (*Id.*). Third, Plunkett's claim that his guilty plea was involuntary is more properly brought in a motion to vacate, set aside, or correct sentence[3]. (*Id.*). Fourth, the § 3553(a) factors weigh against his release (*Id.*).

On May 1, 2024, Plunkett filed a reply wherein he claimed to have satisfied

---

[2] *See* Federal Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited May 13, 2024).

[3] See 28 U.S.C § 2255; By identifying this motion, the Court is not inferring that said motion would have merit and/or be granted.

the requirements of §1B1.13(b)(6). (Doc. 86). Specifically, Plunkett contended that because Congress expressly granted the Commission the authority to define "extraordinary and compelling", the Commission warrants deferential treatment over opposing decisions from the Seventh Circuit. (*Id.*).

## THE FIRST STEP ACT OF 2018

Prior to the passage of the First Step Act, a defendant seeking compassionate release first had to request it from the Director of the Bureau of Prisons ("BOP"). 18 U.S.C. § 3582(c)(1)(A) (2018). The First Step Act of 2018 modified that provision to allow incarcerated defendants to seek compassionate release from a court on their own motion after exhausting administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on their behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

After such a motion is filed, either by the Director of the Bureau of Prisons or by the defendant, the Court may reduce the term of imprisonment after considering the factors set forth in § 3553(a) to the extent they are applicable, upon a finding that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).

The applicable policy statement can be found at U.S.S.G. § 1B1.13. While the policy statement essentially restates § 3582(c)(1)(A), subsection (b) identifies that "Extraordinary and Compelling Reasons" exist under any of the following

circumstances or a combination thereof: (1) Medical Circumstances of the Defendant; (2) Age of the Defendant; (3) Family Circumstances; (4) Victim of Abuse; (5) Other Reasons; and, (6) Unusually Long Sentence. U.S.S.G. 1B1.13(b). Additionally, the policy statement requires the defendant not be "a danger to the safety of any other person or to the community" pursuant to 18 U.S.C. § 3142(g).

**ANALYSIS**

Although a motion for compassionate release can have numerous arguments, Plunkett's *pro se* motion focuses on "the unusually lengthy and grossly disproportionate nature of his sentence". (Doc. 77). However, this is not his first motion for compassionate release. A previous motion for compassionate release was filed in this case on April 19, 2021 wherein Plunkett sought relief due to the COVID-19 pandemic and his serious health conditions. (Doc. 67). That motion was denied on June 7, 2021. (Doc. 76).

The Court agrees with the Government that generally Plunkett's second motion presents no extraordinary or compelling circumstances warranting compassionate release. Namely, he is not suffering from a terminal illness or other condition from which he is not expected to recover, he is under 65 years old, and he does not indicate any death or incapacitation in his immediate family. However, that is not the end of the inquiry because the U.S. Sentencing Commission amended the Guidelines Manual, effective November 1, 2023, and identified several new circumstances as "extraordinary and compelling", including

when a defendant received an "unusually long sentence."[4] Indeed, if a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce gross disparity between the sentence being served and the sentence likely to be imposed at the time that motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Plunkett contends that his sentence should be lowered today, because with the changes in 21 U.S.C. §§841(b) and 851, his prior state felony would have failed to qualify as a serious drug felony, lowering both his statutory penalty and advisory guideline range. (Doc. 86, p.5). Plunkett further argues that the statute prevails over Seventh Circuit precedent; however, this Court does not need to address that issue because of the binding precedent set forth in *Thacker* and its progeny, which hold that the definition of "extraordinary" did not extend to law changes. (*Id.*). *See United States v. Thacker,* 4 F.4th 569 (7th Cir. 2021) (holding that non-retroactive change to statutory mandatory minimum sentence was not extraordinary and compelling reason for relief under §3582(c)(1)(A)(i) and that district court cannot consider such a change, whether alone or in combination with any other factor, when determining whether defendant has established extraordinary and compelling reasons potentially warranty a sentence

---

[4] https://www.ussc.gov/guidelines/amendments.adopted-amendments-effective-november-1-2023.

reduction). *See also United States v. Von Vader*, 58 F.4th 369, 371 (7th Cir. 2023) (quoting *United States v. Brock*, 39 F.4th 462, 466 (7th Cir. 2022) ("Judicial decisions, whether characterized as announcing new law or otherwise, cannot alone amount to an extraordinary and compelling circumstance allowing for a sentence reduction")).

Although not conceded, even if the commission prevails over Seventh Circuit precedence and a change in the law is considered "extraordinary and compelling", a defendant does not automatically get a sentence reduction. Indeed, only after finding an extraordinary and compelling reason exists for release need the judge, as part of "exercising the discretion conferred by the compassionate release statute, ... consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Thacker,* 4 F.4th at 576. In other words, under U.S.S.G. § 1B1.13(b)(6), if the defendant has served at least 10 years of his sentence and if he received an unusually long sentence, a court *may* consider compassionate release individualized circumstances.

There is no question that Plunkett has served more than 10 years. He was sentenced on January 14, 2014, which is the same date that his judgment was entered. (Doc. 47). However, the undersigned does not find that Plunkett's sentence was unusually long, given the totality of Plunkett's criminal history.

Plunkett's sentence was not determined solely from the statutory maximum. To the contrary, his sentence fell well below then maximum term of

imprisonment for Count I, which was 30 years. (Sealed Doc. 36). Moreover, the 212-month sentence still falls below the now maximum term of imprisonment of 20 years, or 240 months. Furthermore, there is ample evidence in the record that supports the sentence imposed. At the sentencing hearing, (ret) Judge Reagan stated the following:

> "Since you were 13 years old you have started committing serious violent crimes. You are a career offender because there were two in your past that counted, but you really got eight. You have really got eight of them. You only need two to get the career offender. You have career offender status in spades. There were more that didn't even count beyond the eight because you were a juvenile. You only got two points added to your guidelines because of committing this offense while on parole, but you were on parole four times but only got two points for that." (Doc. 54, p. 8:21-25 – p. 9:1-5).

Judge Reagan continued as follows:

> "I don't see anything in your case that suggests to me that you are entitled to leniency or that you are going to be anything other than someone who comes back again and again. When I see that kind of pattern, the only thing I can do is protect society from you and that is to sit in jail where you can't hurt anybody. How is my thinking wrong? You started at 13 and every year you were either committing a crime, a serious violent crime, or you were in jail where you couldn't commit a crime. Why should I believe you as you stand before me for the first time and believe you have changed your ways?" (Doc. 54, p. 9:6-16).

Moreover, Judge Reagan stated:

> "You are 32 years old. You have the worst criminal history I have ever seen. I been doing this for 13 years. I have hundreds of cases on my docket from a criminal standpoint every month. I was in private practice for years before that and you have the worst criminal history I have ever seen, the broadest criminal history I

> have ever seen. It is not just one offense, it is the whole spectrum."
> (Doc. 54, p. 10:15-21).

Judge Reagan also commented that he spoke with a federal probation officer prior to sentencing and noted the following:

> "She is very experienced. You have more violent offenses in your background than anyone else that she has seen and this is what she does for a living and has for many, many years. (Doc. 54, p. 10: 23-25, p. 11:1).

The record is clear that Judge Reagan considered the statutory factors set out in 18 U.S.C. §3553(a) to determine an appropriate sentence that was sufficient, but not greater than necessary. (Doc. 54, pp. 13-15). Indeed, Judge Reagan identified the factors in aggravation and mitigation before imposing his sentence, noting Plunkett's "egregrious criminal history". Judge Reagan then rejected the recommendation from the government and defendant for a low end range of 188 months, finding that the sentence in this particular case "needs to promote respect for the law, to justly punish you and specifically deter you and protect the public from further crimes you may commit" (Doc. 54, p. 15:14-16) noting that he had "a high level of confidence that you are going to be a recidivist." (Doc. 54, p. 15:16-17), p. 15. Plunkett has not shown that Judge Reagan would have sentenced him to less, even if the sentencing range was 20, not 30 years, as 212 months is what Judge Reagan deemed appropriate, after considering defendant's circumstances and the sentencing factors under §3553(a). Accordingly, this Court does not find that Plunkett has fulfilled the burden of showing that a change in the law has produced a disparity between the sentence he received and the sentence *he might*

*have received today*, to constitute an extraordinary and compelling reason for his release.

Notwithstanding the foregoing, this offense was not Plunkett's first offense, nor did the distribution involve just one incident although it was his first time in the federal system. Based on this conduct, the Court cannot guarantee that Plunkett would not be a danger to the safety of any other person or the community if he were released. Reducing his sentence to time-served would fail to reflect the seriousness of his crime, promote respect for the law, or provide just punishment for the offense. The Court also fears his incarceration would be insufficient to deter Plunkett from future criminal conduct or to protect the public from further crimes. As such, the Court finds that Plunkett's request for compassionate release must be denied.

Finally, where Plunkett contends his plea was involuntary, the government correctly noted that said contention should be addressed in a separate motion to vacate, set aside, or correct sentence.

## CONCLUSION

For these reasons, the Motion for Compassionate Release filed by Defendant Jamar Plunkett (Doc. 77) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  May 14, 2024**

*/s/ Stephen P. McGlynn*
STEPHEN P. McGLYNN
U.S. DISTRICT JUDGE